IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sidibe Karidjatou, | No. CV-26-01826-PHX-DJH (ASB) |
| Petitioner, | |
| v. | REPORT AND RECOMMENDATION |
| Unknown Party, et al., | |
| Respondents. | |

TO THE HONORABLE DIANE J. HUMETEWA, UNITED STATES DISTRICT JUDGE:

Pending before the Court is pro se Petitioner Sidibe Karidjatou's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1)[1], filed on March 16, 2026. Petitioner is detained at Eloy Detention Center and seeks immediate release from immigration custody. (*Id.* at 11.) For the reasons that follow, undersigned recommends the Petition be denied in part and granted in part.

## I.    PROCEDURAL HISTORY AND BACKGROUND

The facts before this Court appear largely undisputed. (*See* Docs. 1, 9.) Petitioner is a citizen of Ivory Coast who entered the United States without inspection on December 23, 2024. (Doc. 1 at 2.) United States Customs and Border Protection ("CBP") officers encountered Petitioner at approximately 11:45pm on December 23, 2024, about eleven miles northeast of San Luis, Arizona. (Doc. 9 at 1; Doc. 9-1 at 2-3.) Petitioner was

---

[1]    Citation to the record indicates documents as they are displayed in the District of Arizona's official Court electronic document filing system under Case No. CV-26-01826-PHX-DJH (ASB).

apprehended within a group of fourteen individuals. (Doc. 9-1 at 2.) Petitioner has remained in Immigration and Customs Enforcement ("ICE") detention since December 26, 2024. (Doc. 1 at 2.) While not included in the record before this Court, Petitioner at some point during her detention claimed fear of returning to her home country and applied for asylum. (*See id.* at 3; Doc. 1 at 6.) An asylum officer found Petitioner demonstrated a credible fear of persecution or torture. (Doc. 9-2 at 1.) Petitioner was charged as violating § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), as an alien not in possession of valid immigration documents, and considered subject to removal from the United States pursuant to § 212(a)(6)(A)(i) of the INA as an "alien present in the United States without being admitted or paroled[.]" (Doc. 9 at 1-2; Doc. 9-2 at 1.) Petitioner was issued a Notice to Appear before an immigration judge ("IJ") on February 6, 2025. (*Id.*)

On September 29, 2025, an IJ denied Petitioner's application for asylum, withholding of removal, and protection under the Convention Against Torture. (Doc. 1 at 6; Doc. 9 at 2.) Petitioner filed an appeal of the IJ decision with the Board of Immigration Appeals ("BIA") on October 21, 2025. (Doc. 1 at 4, 15; Doc. 9 at 2.)

Petitioner filed a Petition in this Court on March 16, 2026, in which she contests her detention pursuant to 28 U.S.C. § 2241. (Doc. 1.) Petitioner filed four claims in her Petition, which were previously summarized by the Court as follows:

> In Grounds One, Two, and Four Petitioner argues that [her] prolonged detention violated due process. In Ground Three, Petitioner challenges [her] conditions of confinement.

(Doc. 3 at 2.) This Court dismissed Ground Three of the Petition and ordered Respondent to answer Grounds One, Two, and Four. (*Id.*) In Ground One, Petitioner asserts that she has been in prolonged detention after she was denied asylum and her appeal with the BIA is still pending. (Doc. 1 at 6.) Petitioner argues that she has "a confirmed address and sponsor in Texas." (*Id.*) In Ground Two, Petitioner argues her prolonged detention violates "due process guaranteed by the [F]ifth [A]mendment." (*Id.* at 7.) Petitioner contends that she entered ICE custody on December 26, 2024, and has been in custody since with no removal steps, and reiterates she has a sponsor in the United States. (*Id.*) In Ground Four,

Petitioner argues that "being in detention also affect[s] [her] mental health[,]" causing her to experience "stress, anxiety, [and] hopelessness." (*Id.* at 9.) She maintains her "prolonged detention is punitive and does not match with due process." (*Id.*) Because the three remaining claims Petitioner pleads all raise the same substantive issue, i.e., that her prolonged detention violates her due process rights, undersigned will address them together. (*See* Doc. 1 at 6-8.)

Respondent Eric Rokosky[2] filed a Response to Petition for Writ of Habeas Corpus on April 13, 2026. (Doc. 9.) In his Response, Respondent argues that the Petition should be denied because Petitioner's detention as an applicant for admission is lawful. (*Id.* at 2.) Respondent asserts that Petitioner is subject to mandatory detention and does not have an administratively final order of removal. (*Id.*) Respondent argues that Petitioner, as a noncitizen who was apprehended close to the border "cannot be said to have effected an entry" and thus must be considered "like an alien detained after arriving at a port of entry." (*Id.* at 4) (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2022)). Respondent also cites to this Court's order in *Echevarria v. Bondi*, and asserts the facts in Petitioner's case differ from those in *Echevarria.* (*See id.*) (citing *Echevarria v. Bondi*, No. CV-25-03252-PHX-DWL (ESW), 2025 WL 2821282, at *4-9 (D. Ariz. Oct. 3, 2025), *appeal dismissed*, No. 25-7569, 2026 WL 595586 (9th Cir. Jan. 13, 2026)). Finally, Respondent argues that Petitioner, as a noncitizen detained pursuant to 8 U.S.C. § 1225(b)(2)(A), does not have a "protected liberty interest in freedom from detention" and is thus "not entitled to procedural due process protections." (Doc. 9 at 5.)

Petitioner has not filed a Reply with the Court, and the time for such Reply has now elapsed.[3] (*See* Doc. 3.)

---

[2]     Petitioner initially named "Warden Eloy Detention Center" and "Corey A. Price, ICE Phoenix Field Director" as Respondents. (*See* Doc. 1.) Pursuant to this Court's March 19, 2026 Order, Eric Rokosky replaced Respondent "Warden Eloy Detention Center" and Respondent Price was terminated as an improper Respondent. (*See* Doc. 3 at 2-3.)
[3]     Based on the Referral Order issued by this Court, Petitioner had 10 days from the date of service of Respondent's Answer to file a Reply. (Doc. 3 at 3.) Respondent filed his Answer ("Response to Petition for Writ of Habeas Corpus") on April 13, 2026 containing no proof of service. (Doc. 12.) On April 24, 2026 undersigned issued an Order for Respondent to provide a certificate of service of the Response on Petitioner. (Doc. 10.) On April 29, 2026, Respondent filed a certificate of service indicating that the Response was mailed to the Petitioner on April 13, 2026.

## II.   ANALYSIS

"The writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). Writ of habeas corpus relief extends to a person in federal custody if the petitioner can demonstrate he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Accordingly, federal courts have jurisdiction to grant writs of habeas corpus to noncitizens who are being unlawfully detained under 28 U.S.C. § 2241. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) ("The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention.") (citing *INS v. St. Cyr*, 533 U.S. 289, 301-303 (2001)); *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order") (citation omitted). Respondent does not dispute this Court's jurisdiction over considering Petitioner's prolonged detention. (*See* Doc. 9.)

Governing the detention of "applicants for admission" is 8 U.S.C. § 1225. The statute defines "applicants for admission" as "an alien present in the United States who has not been admitted" following inspection by immigration authorities. 8 U.S.C. § 1225. "As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287. Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of documentation, or "certain other aliens designated by the Attorney General in his discretion." *Id.* "Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an IJ or review of the removal order." *See Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1111-1112 (W.D. Wash. 2019). If, however, a noncitizen indicates an intention to apply for asylum or a fear of persecution, the inspecting immigration officer must refer the noncitizen for a

---

(Doc. 11.) Accordingly, based on the record before this Court, this Petition is now ripe for ruling.

credible fear interview with an immigration officer. *See* 8 U.S.C. § 1225(b)(1)(A)(ii). "If the officer determines . . . that an alien has a credible fear of persecution . . . the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id.*

Respondent asserts that Petitioner's detention falls under § 1225(b)(2). (*See* Doc. 9 at 5.) However, the record indicates that Petitioner, as a noncitizen determined to have a credible fear of persecution, is appropriately considered under 8 U.S.C. § 1225(b)(1)(B)(ii). Pursuant to § 1225(b)(1)(B)(ii), a noncitizen "shall be detained for further consideration of the application for asylum." Respondent argues that "Statutes and case law combine to show that an alien is subject to detention under Section 1125(b)(2)(A) when, like Petitioner, they enter without inspection and are apprehended shortly thereafter." (Doc. 9 at 5). It appears Respondent essentially concludes that because Petitioner is an arriving noncitizen, her detention is justified indefinitely. (*See id*. at 2-5.) Regardless of whether Petitioner is detained pursuant to § 1225(b)(1)(B)(ii) or § 1225(b)(2), several District Judges of this District have rejected indefinite detention under § 1225(b) without undertaking a due process analysis. *See Avakian v. Cantu,* No. CV-26-00104-PHX-SHD, 2026 WL 746351, at *2 (D. Ariz. Mar. 17, 2026) (rejecting respondents' reliance on § 1225(b) and *Jennings* without addressing any constitutional considerations); *see also Kaur v. Lyons,* No. CV-26-00217-PHX-KML (ASB), 2026 WL 967846, at *3-4 (D. Ariz. Mar. 24, 2026), *report and recommendation adopted*, 2026 WL 963792 (D. Ariz. Apr. 9, 2026) (adopting the recommendation that considered petitioner's due process rights despite being detained pursuant to § 1225(b)(2)); *but see Mamedova v. Noem*, No. CV-25-04619, 2026 WL 1162282, at *2-3 (D. Ariz. Apr. 29, 2026) (concluding that "an arriving alien subject to statutorily mandated detention under §§ 1225(b)(1) or 1225(b)(2) does not have a constitutional right to a bond hearing."). Accordingly, undersigned assumes the analysis does not end there and addresses Petitioner's due process rights.

//

**A. Entitlement to Due Process Claim**

The Due Process Clause of the Fifth Amendment to the United States Constitution provides that "No person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Beginning with that fundamental principle, undersigned will now briefly address the ever-developing body of caselaw addressing the extent due process is available to immigrants detained pursuant to § 1225(b). *See Rodriguez v. Robbins ("Rodriguez III")*, 804 F.3d 1060, 1067 (9th Cir. 2015), *rev'd sub nom Jennings v. Rodriguez*, 583 U.S. at 287 ("[I]n a series of decisions since 2001, the Supreme Court and [Ninth Circuit] have grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.")[4]

The Supreme Court addressed whether applicants for admission into the United States are afforded due process rights in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). In *Thuraissigiam*, the Supreme Court rejected an arriving noncitizen's due process rights, finding that "an alien in respondent's position has only those rights regarding admission that Congress has provided by statute." *Id.* at 140. In interpreting and applying *Thuraissigiam* to petitioners like Karidjatou, who challenge *detention* rather than *admission*, district courts have taken essentially two different approaches. *See Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1093 (S.D. Cal. 2025) (outlining the two ways district courts have applied *Thuraissigiam* to detention challenges).

Some district courts have denied or dismissed habeas petitions outright for noncitizens challenging detention on due process grounds. *See, e.g., Chavez v. Noem,* --- F.Supp.3d ---, No. CV-26-00323-PHX-MTL-JFM, 2026 WL 381618, at *3 (D. Ariz. Feb. 9, 2026) ("These procedures represent the due process as provided by Congress in statute.

---

[4]    *See Ibarra-Perez v. Howard*, 468 F. Supp. 3d 1156, 1173-1176 (D. Ariz. 2020) for a comprehensive discussion of the background law and series of cases decided by the Ninth Circuit and Supreme Court.

Petitioner is entitled to nothing further under the Constitution.") (denying petitioner's § 2241 petition where petitioner "had been unlawfully present in the United States" since 2022); *Ibarra-Perez*, 468 F. Supp. 3d at 1177 (discussing the *Rodriquez* progeny and finding under the current Ninth Circuit precedent "it is constitutionally permissible to require Petitioner to remain in custody for the duration of his removal proceeding"); *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 679 (S.D. Tex. 2021) ("As far as [p]etitioner is concerned, whatever procedure Congress has authorized is sufficient due process.").

The majority of district courts in the Ninth Circuit have utilized a more "case-specific," or "as-applied," approach to due process challenges from noncitizens disputing their prolonged detention in habeas corpus matters. *See Banda*, 385 F. Supp. 3d at 1117 ("[T]he Court joins the vast majority of other district courts to conclude that unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process."); *Gomez v. Doe*, No. CV 25-03255-PHX-JJT-CDB, 2025 WL 3269886, at *11 (D. Ariz. Nov. 3, 2025) (holding that "[t]he Fifth Amendment's Due Process Clause extends to all persons, regardless of status" and applying a balancing test to determine what procedural safeguards apply to a noncitizen challenging his detention under § 1225(b)(2)(A) pursuant to § 2241), *report and recommendation adopted sub nom. Gomez v. Unknown Party*, 2025 WL 3269055 (D. Ariz. Nov. 24, 2025); *Avakian v. Cantu,* 2026 WL 746351, at *2 (applying due process considerations to petitioner's prolonged detention under § 1225(b)); *Cong v. Noem*, No. 25-CV-3730-GPC-DEB, 2026 WL 76566, at *3 (S.D. Cal. Jan. 9, 2026) ("[M]ost courts have opted for an alternative, as-applied approach [in considering *Thuraissigiam*].") (collecting cases from the Ninth Circuit); *Sadeqi,* 809 F. Supp. 3d at 1093 ("This [c]ourt agrees with the majority position that a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing.") (recognizing the distinction in applying *Thuraissigiam* between an arriving alien's due process rights to *admission*, circumscribed in *Thuraissigiam,* rather than limiting a petitioner's ability to challenge their *detention*) (collecting cases). Moreover, the Ninth Circuit expressed in the most recent *Rodriguez* decision, following

remand from the Supreme Court in *Jennings v. Rodriguez*[5], that "[w]e have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018).

Undersigned recommends that the Court join the majority of courts in this Circuit in holding that a prolonged detention under § 1225(b) may eventually give rise to due process issues. *See Cantu,* 2026 WL 746351, at *2 (rejecting respondents' objections that an arriving noncitizen may be detained through the completion of their removal proceedings, finding that the Supreme Court did not reach the constitutional analysis in its decision in *Jennings* and therefore did not preclude whether the denial of a bond hearing under § 1225(b) could violate the Due Process Clause). However, undersigned recognizes that there is the above-referenced split even within the District and ultimately undersigned defers to the assigned District Judge on the issue.

**A. *Banda* Test (Whether Petitioner's Detention Has Become Unreasonable)**

Courts apply a multifactor test to determine whether § 1225(b) detention has become unreasonable and therefore violative of due process. *See Banda*, 385 F. Supp. 3d at 1118. While courts differ slightly on the test applied, they are substantively the same – balancing petitioner's interest, government interest, and fault on either party. *See Baishymyrov v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-01658-DMC-HC, 2026 WL 145644, at *6-9 (E.D. Cal. Jan. 20, 2026) (applying the *Lopez*[6] test to determining the reasonableness of a § 1225(b) detention); *Henriquez v. Garland*, No. 5:22-CV-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) (applying the *Matthews v. Elridge*[7] test to assess whether prolonged detention has violated due process

---

[5]    583 U.S. at 281.
[6]    "To determine whether § 1226(c) detention has become unreasonable, the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022).
[7]    "[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through

in 8 U.S.C. § 1226(c) context); *Yacoub v. Scott*, No. 2:26-CV-00783-TL, 2026 WL 1107805, at *3 (W.D. Wash. Apr. 23, 2026) (applying the *Banda* test to assess prolonged detention of noncitizen detained pursuant to § 1225(b)(1)(B)(ii)). Undersigned will apply the *Banda* test based on recent Report and Recommendation adoptions to come out of this District, but similarly notes that "[u]nder either test, Petitioner is entitled to a bond hearing." *See Avakian v. Rokosky,* No. CV-26-00104-PHX-SHD, slip op. at 21 (D. Ariz. Feb. 24, 2026), *report and recommendation adopted sub nom. Avakian v. Cantu*, 2026 WL 746351 (D. Ariz. Mar. 17, 2026); *see also Kaur,* 2026 WL 963792, at *1 (adopting the recommendation that applied *Banda* to assess petitioner's due process rights). Under *Banda*, courts will balance the following factors: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." 385 F. Supp. 3d at 1118 (quoting *Jamal v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019)).

Regarding the first factor, total length of detention, Petitioner has been in ICE detention since she arrived in the United States on December 23, 2024. (Doc. 1 at 2.) Thus, Petitioner has been detained for at least sixteen months as of the date of this Report and Recommendation. (*See id.*) Federal courts have found that prolonged detention in a similar (and shorter) range of time leans towards granting a bond hearing. *See Lopez*, 631 F. Supp. 3d at 879 ("Petitioner has been in immigration detention . . . approximately one year. District courts have found shorter lengths of detention pursuant to § 1226(c) without a bond hearing to be unreasonable."); *Amado v. United States Dep't of Just.*, No. 25-CV-2687-LL-DDL, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable."); *Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at *3

---

the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976).

(N.D. Cal. Jan. 25, 2019) ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.") (internal citations omitted). Accordingly, Petitioner's over sixteen-month detention weighs towards granting a bond hearing.

The second factor, likely duration of future detention, also weighs towards Petitioner's position. On September 29, 2025, an Immigration Judge denied Petitioner's asylum applications. (*See* Doc. 9 at 2.) Petitioner appealed that decision on October 21, 2025, and that appeal is pending before the BIA. (*See* Doc. 1 at 4.) Courts have found that pending administrative and possible Ninth Circuit appeals can be "sufficiently lengthy" such that it favors Petitioner's ability to be heard. *See Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at \*7 (E.D. Cal. July 25, 2025) (citing *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020)); *see also Banda*, 385 F. Supp. 3d at 1119 ("Petitioner only recently filed his appeal of the IJ's removal order with the BIA. If the BIA affirms, petitioner will have the opportunity to seek review in the Ninth Circuit. This process may take up to two years or longer.") (citing *Jamal*, 358 F. Supp. 3d 853, at 859); *see also Arechiga v. Archambeault*, No. 2:23-CV-00600-CDS-VCF, 2023 WL 5207589, at \*4 (D. Nev. Aug. 11, 2023) ("It is anyone's guess how long it will take the BIA to reconsider [the] petition . . . or how long subsequent appeals of that decision might take.") Based on the record before this Court, it appears that Petitioner could face many more months or years of pending appeals. *See Banda*, 385 F. Supp. 3d at 1119. Accordingly, the potential length of detention during Petitioner's administrative and possible Ninth Circuit appeals process weighs towards granting Petitioner a bond hearing.

In the third factor, the Court considers the conditions of detention where the petitioner is detained. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (quoting *Jamal*, 358 F. Supp. 3d at 860). Here, the parties agree Petitioner is confined at the Eloy Detention Center in Arizona. (*See* Docs.

1, 9.) This Court has previously recognized that Eloy Detention Center is a CoreCivic immigration detention facility "opened in 1994 and . . . designed to imprison people in criminal custody." *See Rosado v. Figueroa,* No. CV 25-02157-PHX-DLR (CDB), 2025 WL 2337099, at *13 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted,* 2025 WL 2349133 (D. Ariz. Aug. 13, 2025). The facility "has since evolved into an ICE detention facility." *Id.* (finding that the conditions of Eloy Detention Center favored Petitioner's private interest to liberty and that courts consider "whether a detainee is held in conditions indistinguishable from criminal incarceration.")

Furthermore, Petitioner pleads in her Petition that the "[d]etention conditions are harming [her] health and ability to function. [She] experiences untreated health issues, pain in the body, sleep deprivation, running stomach, tooth ache." (Doc. 1 at 8.) Petitioner asserts that she "ran from [her] country because [she] was going through inhuman treatment and being detained for so long makes [her] go through stress, anxiety, hopelessness." (*Id.* at 9.) Petitioner's pleadings about the conditions she faces at Eloy Detention Center coupled with this Court's prior finding that Eloy "was designed to imprison people" and that the conditions were "indistinguishable from criminal incarceration" favor granting a bond hearing. *See Rosado,* 2025 WL 2337099, at *13.

In the fourth and fifth factors, the Court considers delays in the removal proceedings caused by the detainee or the government. Here, the factors are likely neutral as applied to Petitioner, because there is no evidence in the record that either Petitioner or Respondent have caused any delay in the removal proceedings. (*See* Docs. 1, 9.)

Under the sixth factor, the Court looks at the likelihood that the removal proceedings will result in a final order of removal. Undersigned finds this factor is also neutral. *See Banda*, 385 F. Supp. 3d at 1118. While this Court cannot presume what the BIA or Ninth Circuit may decide on Petitioner's asylum claim, the record before this Court appears to indicate Petitioner has at least a viable case to plead. (*See* Doc. 9-2 at 1) (Petitioner was found to have demonstrated a credible fear of persecution or torture).

Undersigned finally makes note of similarly situated petitioners. Based on the

record before this Court, the United States CBP encountered Petitioner after she crossed over the border, approximately eleven miles northeast of San Luis, Arizona. (*See* Doc. 9-1 at 2-3.) Courts appear to take into consideration when petitioners enter the United States as an "arriving" noncitizen and immediately surrender to border patrol agents claiming asylum when determining whether to grant a bond hearing. *See Avakian v. Rokosky,* slip op. at 18 ("Logically, if due process affords criminal aliens under orders of removal a bond hearing if their detention becomes 'unreasonable,' notwithstanding that their detention is mandatory, then non-criminal aliens should also be afforded this due process protection."); *see also Sufiiarov v. Warden, Otay Mesa Det. Ctr.,* No. 25-CV-3265-LL-DDL, 2026 WL 26079, at *1, 5 (S.D. Cal. Jan. 5, 2026) (granting bond hearing to petitioner who arrived to the United States through an appointment seeking asylum); *Sadeqi,* 809 F. Supp. 3d at 1093 (granting bond hearing to petitioner who arrived to the United States via port of entry and immediately claimed asylum); *c.f. Chavez v. Noem,* 2026 WL 381618, at *3 ("[A] person who entered the United States illegally and is clearly and beyond a doubt not entitled to admission, is subject to mandatory detention") (denying a bond hearing for petitioner detained pursuant to § 1225(b)(2)(A) in part because they had been "unlawfully present in the United States" for almost three years prior to detention).

However, surrendering to border officials does not appear to be dispositive in examining due process protections. *See Doe v. Andrews,* No. 1:25-CV-00333-JLT-HBK (HC), 2026 WL 797694, at *1-12 (E.D. Cal. Mar. 23, 2026) (granting petitioner bond hearing after conducting *Matthews* balancing test despite petitioner entering the United States unlawfully and being apprehended by CBP officers); *Singh v. Chestnut*, No. 1:26-CV-01858-TLN-SCR, 2026 WL 923809 (E.D. Cal. Apr. 6, 2026), *report and recommendation adopted*, 2026 WL 1035055 (E.D. Cal. Apr. 16, 2026) (making no note of whether petitioner entered the United States lawfully but granting a bond hearing after petitioner was "stopped by" CBP officers based on lack of legal entry documents); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *1-9 (E.D. Cal. July 25, 2025) (granting petitioner bond hearing despite

petitioner presenting CBP officers with fraudulent Danish passport). Although the Petitioner in the instant case was detained by border patrol agents eleven miles away from the border, this fact does not appear to change the due process analysis. *See Rodriguez v. Marin*, 909 F.3d at 256 (expressing "grave doubts" that prolonged detention could not raise constitutional concerns).

With three factors weighing in Petitioner's favor and three factors neutral, undersigned recommends that the District Judge find that Petitioner's continued detention has become unreasonable and due process requires that Petitioner be provided with a bond hearing.

## B. *Bautista*[8] applicability

Undersigned recognizes that this Court has in the past considered 8 U.S.C. § 1225(b) detention and bond eligibility pursuant to the Central District of California's decision in *Bautista* and its progeny. *See, e.g., Kilonga v. Rhodes*, No. 26-CV-01302-PHX-DJH (JFM), slip op. at 1-2 (D. Ariz. Mar. 19, 2026). In *Bautista,* the Central District of California declared the Bond Eligible Class members not subject to mandatory detention under § 1225(b)(2). *Bautista*, 2025 WL 3678485, at *1. Bond Eligible Class members are defined as:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Bautista v. Santacruz,* 813 F. Supp. 3d 1075, 1077-1078 (C.D. Cal. 2025).While the Ninth Circuit stayed the district court's class certification and final judgment "insofar as they extend beyond the Central District of California," *see Bautista v. U.S. Dep't of Homeland Sec.*, No. 25-7958 (9th Cir. Mar. 31, 2026), this Court has recognized that "the stay did not alter the impact of the declaratory judgment within the Central District of California, nor does it affect the Court's independent determination that Petitioner is entitled to relief in

---

[8]   *Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025).

the form of release or a bond hearing." *See Kilonga*, slip op. at 1-2. However, in the instant case it appears Petitioner would not be a member of the bond-eligible class as a § 1225(b)(1)(A)(ii) noncitizen detainee. Accordingly, should the Court disagree with the above due process analysis, Petitioner does not appear to be eligible for bond on *Bautista* grounds.

## III.   CONCLUSION AND REMEDY

Based on the above, undersigned recommends this Court grant Petitioner a bond hearing. While Petitioner requests immediate release from detention (*see* Doc. 1 at 11), courts in this Circuit have found in situations similar to Petitioner's that a bond hearing, rather than immediate release, is the appropriate remedy. *See Lopez*, 631 F. Supp. 3d at 882-883 ("The [c]ourt finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge rather than immediate release.") (collecting cases). Thus, undersigned recommends the Petition (Doc. 1) be granted in part (insofar as a bond hearing is granted) and denied in part (denying other requested relief).

**RECOMMENDATION**

Based on the foregoing,

**IT IS THEREFORE RECOMMENDED** that the Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1) be **granted in part and denied in part** as follows:

1.   Undersigned recommends that the Court **grant** Petitioner's request for a bond hearing and order that, within **thirty (30) days** of the date the Petition being granted, Petitioner be afforded a bond hearing before a neutral adjudicator at which hearing the government must bear the burden of showing that Petitioner should not be released on bond because Petitioner is a flight risk or a danger to the community; and

2.   It is recommended all other forms of relief in the Petition, including an order directing Petitioner's immediate release, be **denied**.

//

- 14 -

**EFFECT OF RECOMMENDATION**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 4th day of May, 2026.

_____
Honorable Alison S. Bachus
United States Magistrate Judge